Filed 5/4/15  P. v. Wilson CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

**(Tehama)**

----

| | |
|---|---|
| THE PEOPLE, | C075081 |
| Plaintiff and Respondent, | (Super. Ct. Nos. NCR85279, NCR85912) |
| v. | |
| ANDREA RAE WILSON, | |
| Defendant and Appellant. | |

A jury convicted defendant Andrea Rae Wilson of assault with a deadly weapon. (Pen. Code, § 245, subd. (a)(1).)[1]  In an unrelated case, defendant pleaded guilty to felony petty theft.  (§ 666.)

---

[1] Undesignated statutory references are to Penal Code.

1

Sentenced to state prison for two years for the assault and an additional eight months for the theft, defendant appeals. She contends the trial court erroneously excluded evidence of the assault victim's prior violent act. She also contends her counsel performed ineffectively by failing to subpoena witnesses to lay the foundation for the victim's positive drug screening and by failing to subpoena defendant's medical records. She further contends there was insufficient evidence to prove she had served the prior custodial time required for felony petty theft. Finally, she contends the court made a clerical error in the abstract of judgment. We shall affirm the judgment but direct the trial court to correct this clerical error.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 25, 2012, defendant, along with her two daughters, went to the home of Michael and Anjanette Eakin. The two families engaged in a verbal and physical altercation, with Mrs. Eakin either chasing off or attacking defendant's family with a baseball bat, and defendant gaining control of the bat and making some contact of her own. During the melee, Mrs. Eakin suffered visible injury. Defendant was convicted of assault with a deadly weapon.

### Background Leading to the Fight

The teenaged daughters of defendant and Mrs. Eakin had apparently once been friends. While the record is unclear as to why this friendship soured, five or six months prior to the altercation, defendant allegedly made phone calls to the Eakin home in which she swore at Mr. Eakin. After school, on the day of the attack, defendant's younger daughter told defendant that Mrs. Eakin had slapped her. Defendant picked up both girls and drove to the Eakin home.

2

### The Fight

Accounts of the fight, which came from the two respective families, differed wildly.[2]

Defendant's witnesses[3] testified that defendant calmly came to the Eakin house to discuss the matter of the slapping incident only after trying to resolve it with school officials, and the Eakins instigated a fight. Mrs. Eakin attacked defendant with the baseball bat. Defendant tried to grab the bat from Mrs. Eakin, but it slipped—hitting Mrs. Eakin. Defendant tried again and was able to get it away from her. While they were struggling, Mr. Eakin came out of the house with a gun, and defendant and her family fled.

The Eakins testified that defendant came to the door in a rage. Mr. Eakin proceeded outside to try to resolve matters. Mrs. Eakin then came out of the house with the bat when she thought her three-year-old child may have toddled into the fracas. Defendant took the bat from Mrs. Eakin and hit her in the head with a "home run hit" four or five times. Defendant then handed the bat off to her daughter who hit Mrs. Eakin another 20 times. Mr. Eakin then retrieved a BB gun pistol to scare off defendant and her family, at which point they fled, almost running over Mrs. Eakin.

### Evidentiary Determinations

Two items of defense-proffered evidence were excluded after a belated conference in chambers the morning of trial.[4]

---

[2] Prior to sentencing, the trial court made particular note of the nature of the testimony: "I sat in this very chair and heard the testimony throughout the jury trial in this matter. And I have to say that I find much of what I heard to be somewhat unbelievable to some extent, not only from your part [(i.e., defendant's)] but even from the victims."

[3] Defendant did not testify at trial.

[4] The trial court admonished counsel for failing to raise these evidentiary issues in written motions in limine by the court-imposed deadlines.

First, the defense offered evidence that Mrs. Eakin had a prior conviction for slapping her own teenaged daughter. The trial court ruled that the conviction was not admissible as aggressive character evidence because the crime did not involve moral turpitude. Following an Evidence Code section 352 analysis, the court further ruled that the underlying conduct was inadmissible.

Second, defense counsel also tried to admit Mrs. Eakin's medical records. These records were initially subpoenaed by the prosecution to show the extent of her injuries, but when the prosecution decided not to use them, the defense sought to admit them to demonstrate there were drugs in Mrs. Eakin's system at the time of the attack. Defense counsel failed to subpoena an expert to lay the foundation for how the drug tests were administered. The trial court ruled the records were inadmissible without such a foundation.

### John Egolf's Testimony

The defense called John Egolf, the nurse practitioner who treated defendant at the emergency room. Egolf did not bring defendant's chart with him to court. Both attorneys asked questions that Egolf was unable to answer without consulting his chart. These questions were related to the specific nature of an injury to defendant's hand.

### An Unrelated Plea Bargain

In an unrelated case, defendant pleaded guilty to felony petty theft with priors. (§ 666.) As part of this plea, she admitted to three prior theft-related offenses. She was not asked, nor did she offer, whether she had served custodial time for any of these offenses.

**DISCUSSION**

### I. The Trial Court Did Not Violate Defendant's Rights by Excluding Evidence of Victim's Previous Violent Act

Defendant contends the trial court erred in excluding evidence regarding Mrs. Eakin striking her own teenaged daughter. A trial court has discretion to weigh the probative value of any evidence against the probability that it may consume too much time, create a substantial danger of undue prejudice, confuse the issues, or mislead the jury. (Evid. Code, § 352.) "It is the exclusive province of the trial court to determine whether the probative value of evidence outweighs its possible prejudicial effect. [Citation.] The trial court's exercise of discretion on this issue will not be disturbed on appeal absent a clear showing of abuse." (*People v. Goldman* (2014) 225 Cal.App.4th 950, 959.)

In excluding this evidence, the trial court reasoned that the specific conduct "which is in essence akin to corporal punishment" was not sufficiently probative of Mrs. Eakin's aggressive nature to overcome the potential to confuse the jury of the factual distinctions between the interfamily and intrafamily disputes in this case. The concern for this potential confusion is certainly not a clear showing of abuse.[5] We will not disturb this ruling.

### II. Neither Defense Counsel's Failure to Subpoena an Expert Witness to Lay the Foundation for the Victim's (Mrs. Eakin's) Positive Drug Screening nor Defense Counsel's Failure to Subpoena Defendant's Medical Records Violated Defendant's Right to Effective Counsel

Defendant asserts defense counsel rendered ineffective assistance by failing to subpoena an expert witness to lay the foundation for medical records to establish that

---

[5] In fact, the trial court and counsel spent nearly a page of the record attempting, themselves, to figure out who was slapping whom.

5

there were drugs in Mrs. Eakin's system at the time of the attack, and by failing to subpoena defendant's medical records to establish the specific injury to defendant's hand.

To establish ineffective assistance of counsel, defendant must demonstrate that counsel's performance was unreasonably deficient, and that defendant suffered prejudice as a result. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 691-692 [80 L.Ed.2d 674, 693, 696]; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218.) Counsel's ineffectiveness becomes prejudicial when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland*, *supra*, 466 U.S. at p. 694 [80 L.Ed.2d 674 at p. 698].)

"It is not necessary for us to consider the performance prong of the test before considering whether the defendant suffered prejudice as a result of counsel's alleged deficiencies. [Citation.] 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.' " (*People v. Goldman*, *supra*, 225 Cal.App.4th at pp. 957-958.) That is the course we follow here.

## A. *Defense Counsel's Failure to Subpoena an Expert Did Not Cause Prejudice*

Defendant contends that a particular medical report would have shown that "[Mrs. Eakin] had THC [(marijuana agent)] and opiates in her system at the time of this occurrence." The only reason this evidence was not admitted was there was no expert subpoenaed to lay the foundation for the report. However, the trial court explicitly permitted defense counsel to question Mrs. Eakin about her own drug use. Mrs. Eakin admitted to having both drugs in her system at the time of the attack. Consequently, there is not a reasonable probability that the jury would have reached a different verdict had Mrs. Eakin's medical report corroborated her own self-incrimination.[6]

---

[6] The trial court explicitly made this point, calling the drug screening "irrelevant" after Mrs. Eakin testified.

## B. *Defense Counsel's Failure to Subpoena Defendant's Medical Records Did Not Cause Prejudice*

Defendant contends that Nurse Practitioner Egolf, who treated defendant, was unable to fully testify because defense counsel did not subpoena Egolf's treating report. The specific questions Egolf was unable to answer involved the exact nature of defendant's injuries and whether or not they were consistent with the possibility that Mrs. Eakin struck defendant with the bat.[7]

However, the question this evidence would answer is not in dispute. Mr. Eakin testified, "My wife swung the bat like that, it probably hit [defendant's] fingers." Mrs. Eakin testified, "I was trying to keep [defendant] away from me and she caught the bat." Defendant's teenaged daughter testified, "she [(Mrs. Eakin)] hit my mom in the wrist." Defendant's younger daughter testified, "My mom went to get the bat out of her [(Mrs. Eakin's)] hands and it hit her wrist." In a record replete with vastly conflicting stories, this is one place where the testimony seems rather consistent. Mrs. Eakin's bat came in contact with defendant's fingers, hand, or wrist.

There is not a reasonable probability that the jury would have reached a different verdict had Egolf been able to specifically testify whether defendant's injuries were consistent with being hit with a bat; all parties agreed she was hit by one.[8]

---

[7] Presumably, although not addressed in defendant's brief, this testimony was being elicited to suggest defendant acted in self-defense, and that with an (alleged) broken wrist, she would have been unable to hit Mrs. Eakin in the manner described.

[8] To the extent defendant sought these records in order to show that she had incurred a broken wrist in this fracas, Nurse Practitioner Egolf testified his report did not include a diagnosis of whether or not the wrist was broken, and therefore it could not have been used for this purpose.

### III.  Defendant's Plea of Guilty Was Sufficient to Find Her Guilty

To convict defendant of felony petty theft with a prior, the prosecution had to prove defendant (1) had been convicted of three or more offenses in an enumerated statutory list, (2) had served a term of imprisonment for those offenses, and (3) had committed petty theft.  (§ 666, subd. (a).)  Defendant claims there was no substantial evidence to prove she had served custodial time on the prior offenses she admitted to in her guilty plea of felony petty theft.

"A guilty plea admits every element of the offense charged and is a conclusive admission of guilt.  [Citations.]  It waives any right to raise questions about the evidence, including its sufficiency."  (*People v. Lobaugh* (1987) 188 Cal.App.3d 780, 785.)

The specific count to which defendant pleaded guilty alleged that she "did unlawfully and in violation of Penal Code Section 484[, subdivision] (a), steal[,] take[,] and carry away the personal property of Wal-Mart.  It is further alleged that Defendant was previously convicted in the State of California of the crime(s) listed below [(three § 666-delineated offenses)] and served a term for each crime in a penal institution and was imprisoned therein as a condition of probation."  No one disputes that defendant made a free, knowing, intelligent, and voluntary plea of guilty to this count in order to have another case dismissed.  Consequently, the evidence is sufficient to support defendant's felony petty theft conviction under section 666.

### IV.  Clerical Error in the Abstract of Judgment

In line with both parties' agreement, we direct the trial court to correct the abstract of judgment to reflect the court's oral pronouncement of a one-third the middle term sentence for the felony petty theft with a prior conviction (i.e., eight months; § 666) rather than one-third of the upper term.  (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

8

## DISPOSITION

The judgment is affirmed.  The trial court is directed to correct the abstract of judgment at item 1 to reflect a sentence of one-third of the middle term for the felony petty theft with a prior conviction (i.e., eight months; § 666) rather than one-third of the upper term, and is further directed to send a certified copy of this corrected abstract to the Department of Corrections and Rehabilitation.


                                                                 BUTZ                 , J.


We concur:


       BLEASE          , Acting P. J.


       DUARTE        , J.